Good morning, Your Honors. May it please the Court, my name is Carlos Cruz and I represent the Petitioner, Mr. Mendiola. I'd like to reserve two minutes for a rebuttal. In this case, Your Honors, the District Court erroneously dismissed the Petitioner's writ of habeas corpus based on the following three reasons. First, the record shows that Petitioner was in fact represented by counsel. Second, the District Court erred in failing to reach the issue of whether or not Petitioner had a right to due process in having his attorney notified about his impending detention. And lastly, Petitioner was in fact... His impending what? His impending detention, Your Honor, that his attorney should have been notified before he was in fact taken into custody by the Immigration Service. That issue, Your Honor, wasn't reached in this case by the Lower District Court. And that issue wasn't addressed by the Court because the Court found... I didn't say Lower District Court, you said District Court. Yes, Your Honor, thank you. It wasn't reached by the District Court because the District Court found that Petitioner was not represented by counsel in those proceedings. The Court cites three reasons for reaching that conclusion. First, the Court notes that there is no notice of appearance from counsel in the record. And yet, there's absolutely no notice of appearance from any other attorney in this record. Counsel for the government submits a notice of appearance from an attorney, Bueno and Dresselhaus, but when the Court reached that issue and made that annotation in its decision, there were absolutely no notices found in the record. That absence of that document did not show that Petitioner was not represented by counsel. In fact, there was a letter submitted by Petitioner on the attorney's letterhead, duly signed by the attorney, which noted that he submitted a request for a continuance a day prior to that interview that was canceled by the Immigration Service, which subsequently led to Petitioner's arrest and detention. Well, the record doesn't show that any attorney signed that request, does it? That is true, Your Honor. There is no document in the file presently that shows that an attorney signed that document. What is in the record is a copy of the letter with the date stamp on the lower right-hand corner that says that someone date-stamped that document on January 5, 2004. Mr. Scherer's letter provides that he submitted that letter, and it was when that letter was submitted to the service that that date stamp was provided. Government counsel notes that the date stamp comes from the Board of Immigration Appeals, but that is impossible in this case. The Board of Immigration Appeals is located in Falls Church, Virginia, and the Board does not date-stamp documents. The date stamp provides three entries. The date stamp says Department of Justice, Executive Office for Immigration Review, and it also says Board of Immigration Appeals. This is a multi-office date stamp, and the government routinely uses this stamp to accept documents from attorneys when requesting continuances. Now, government argues that in this case, the box provided for requesting a continuance was not completed. Yet, counsel is entitled to submit a request letter asking for that continuance. In fact, Mr. Scherer provides in his letter that he made that request, and that he also attached a Notice of Venture of Appearance known as a G-28 document. Now, he alleges that he is, of course, surprised by the absence of that document in the record, but nevertheless, it is clear from this record that someone submitted that document to the Immigration Service a day prior to the interview. Mr. Scherer submits that he is the one who filed that document, and there is absolutely no other explanation that the government can offer. Does this come from Mr. Mendiola's A-file? Yes, Your Honor, that document comes from his A-file. If that document was found in the Board of Immigration Appeals file, it would come from the Board's file. If it came from the Immigration Courts file, it would come from the Court's file. This document is found in Mr. Mendiola's Immigration file with the government. And so, therefore, clearly, the issue for the District Court should have been, who filed this document? Did Mr. Scherer, in fact, submit that document? What happened to that Notice of Venture of Appearance that Mr. Scherer alleges that he submitted to the Immigration Service? These issues were not resolved by the Court. Instead, the Court simply found that Mr. Mendiola was not represented by counsel. You're arguing that factual finding is clear error. Yes, Your Honor. Now, if he had been represented by counsel, was the INS under an obligation to notify the counsel? Yes, Your Honor, that is definitely our argument. And in this case, the Court didn't reach that conclusion. Now, the Court distinguishes the cases cited by Petitioner in his traverse to the Court, but those cases were distinguished on statutory grounds. Now, this writ is not based on a statutory right to counsel. It is based on a due process right to counsel, given the scenario presented by the facts before the Court. The other issue which is important that the Court should consider is the following. In this case, the Court found that even if Mr. Scherer represented the Petitioner, that that representation was limited to the family petition. Yet, that conclusion is not supported by the Notice of Appearance filed with the Immigration Service, and certainly not supported by the applicable regulation found at 8 CFR section 292.5A. That section says that every notice, every document must be served on the attorney who represents the individual before the service. In addition, the Notice of Appearance does not provide that there is a limitation with regards to that representation. Well, if his sin is a due process violation, what is the prejudice here? Yes, Your Honor, the prejudice here is that Petitioner was prevented from seeking to join in a motion to reopen, so that he could reopen proceedings and absolve that deportation order, which currently prevents him from readjusting his status through his now U.S. citizen wife. The Petitioner was ordered deported in January of 19- Didn't he ask, didn't he go to the, I guess the V.I.A. or whoever you're supposed to go to and ask them to join in a joint motion and they refused? Yes, Your Honor, the Petitioner did go to the District Counsel's office in Los Angeles and asked for them to join the motion, and they declined, and that's exactly my point, that once he was taken into custody, any incentive on the part of the Chief Counsel's office was completely eliminated. Once he was taken into custody, under no circumstances was the Chief Counsel going to join in reopening proceedings for someone who was already in their custody. The fact that he was subsequently released doesn't remedy that situation, because he is already in custody, he is ready for removal, simply awaiting a decision from the Court regarding that rate of habeas corpus, and now, of course, this Court's decision. The remedy here, despite the Court's conclusion, would be, in Petitioner's point of view, to, at this point, compel the government to join in that motion to reopen. Now, that doesn't mean that Petitioner is now going to become a legal resident. It simply means that he will have an opportunity to appear before an immigration judge to present the merits of his application. He is now eligible for that legal residence, which he previously had, along with the waiver, but none of this is possible because he has that deportation order. So what happens if we roll against you? Your client is deported, but he can still apply for adjustment of status after a certain period of time? Is that what's forever barred, even though he's married to a, what is it, is she a citizen now? She's a U.S. citizen, Your Honor, yes. Unfortunately, Your Honor, this is a permanent bar to admission. As an aggravated felon, because he was convicted of an aggravated felony in 1992, he is barred from seeking legal residence, even though he is married to a U.S. citizen and has three children who are U.S. citizens. The only way that Mr. Mendiola can become a legal resident or reacquire that legal residence status would be for the immigration court or the Board of Immigration Appeals to reopen those proceedings and to allow Mr. Mendiola to seek that waiver before the court. So he would have, is it 212C relief? It would be a 212C, Your Honor, in conjunction with an application for adjustment of status. So all the petitioner is asking here is for the opportunity to present his case before the immigration court. If the court wishes to deny the matter on the basis of discretion, certainly the court is entitled to do that. Petitioner only seeks that one opportunity to apply for relief. I'd like to reserve my remaining time for rebuttal, Your Honor. Thank you. All right. Good morning. Assistant United States Attorney Gwen Gamble on behalf of the Attorney General. May it please the court, Mr. Mendiola has circumvented his valid 1997 final deportation order by filing repeated judicial and administrative actions to stay his removal for the past 10 years. He's filed five petitions for review in this court and five motions to reopen before the BIA. And they've all been unsuccessful. Accordingly, this case is not about a violation of due process. It is an illustration of how the process can be abused to prevent the order of deportation from ever being executed. Counsel's made some points that I'd like to address. Could you speak just a little louder, please? Yes, Your Honor. Some of the points that counsel just raised are just simply not supported by the record. But perhaps the most interesting one is the remedy that he asks this court to give him, to have an order from this court to compel the immigration service to join in a motion to reopen before the immigration court. That was not requested below, but there is no authority for that. The decision as to whether or not to join in a motion to reopen is a discretionary decision. The immigration service declined to join in the motion to reopen. But Mr. Mendiola's counsel can on his own make a motion to the immigration court to reopen the deportation proceedings if he sees fit. What he's asking is for this court to compel something. It's already been done, hasn't it? The closest that I could see was the very last motion to reopen that was filed in 2004 really was about requesting 212C relief on the basis of the St. Cyr case. And there was reference to the fact that he had a wife who was a citizen. Have they not also asked the immigration service to join in that? The motion to reopen. Yes, they asked the immigration service to join in the motion. They declined. And the immigration service declined, as was its right. It's a discretionary matter. And it declined based on the circumstances of Mr. Mendiola's case. In this instance, the prejudice that counsel has talked about seems to be, he's talking about an expectation that he would have been able to convince the service to join in a motion. An expectation of process is not a due process right. There has been no prejudice for the service taking Mr. Mendiola into custody to execute the order of deportation. What I don't understand is, so has Mr. Mendiola received preliminary approval of his petition, the I-130 petition? Yes. And that was done after he was taken into custody. Okay, so he has approval for this petition, yet the government still wants to deport him. It seems like the government is taking inconsistent positions. Your Honor, the petition for the I-130 approval is a preliminary step. It is not something that says that someone has the right to have their status adjusted. And as this Court found in the Tongva II case, which is cited in our brief, the fact that you have an approved I-130 petition, which just demonstrates that you have a family member who is a citizen. This Court has found that having an approved I-130 does not give you the right to have your status adjusted. You still have to apply and establish that you're entitled to adjustment of status. And in a case where there have been deportation proceedings, the only way that you can do that is by having the immigration court reopen the proceedings. And that has not been done here, and that's not up to the service. Is he correct that despite the fact he has a U.S. citizen wife and three U.S. citizen children, that if this deportation order is executed, he is forever barred from coming back to this country? I don't know that that was counsel's point, but frankly, Your Honor, I'm not sure of the answer to that. I don't know if his order is executed. I don't know that he is forever barred. He has a firearms violation, assault with a firearm, which is the charge. And that may be a forever bar. Well, he has one aggravated felony. Yes. How long ago was that? I believe that was in 1992 or 1994. And that's the only criminal activity since, like, 16 years ago? That is. And that is a ground of inadmissibility that Congress has determined, you know, to be the case. And so in this instance, the two of us. What was that aggravated felony? Assault with a firearm. The record indicates that at a family setting, Mr. Mendiola took out a rifle and pointed it at people in front of children and family members. And based on that, he has been found deportable in 1997. And his order of deportation is not being challenged here. He doesn't allege any challenge to the validity of the order of deportation. That has been reviewed and reviewed and has been in place. What he is alleging here is that the service, that he had a due process right to advance notification. There is nothing in the record, and the record would have it if it was in there, to show that he was represented by counsel. In fact, Mr. Mendiola had the opportunity to put forth this notice of representation that he says that Mr. Sher prepared. He had that opportunity in the district court. He had that opportunity here. He has not put forth this notice of appearance that he says was prepared. And, in fact, the denial of the original petition that he says he was represented on for the I-130 was denied because no one showed up for the interview. And the denial letter was sent to Mr. Mendiola's wife. She's the one who had prepared the petition. If there had been a notice of appearance submitted by this attorney, the denial letter would have been sent to the attorney. The fact that there is no notice of appearance in the record, the fact that the denial letter was sent to his wife, and the fact that Mr. Mendiola has not put forth this purported notice of appearance demonstrates that he was not represented. Even if he had been represented, there is no due process right to have counsel notified that a fully exhausted final order of deportation is going to be executed. There is no case law that indicates that, and the regulations indicate that you do not have to give notice. You can take someone into custody. This situation is one where he fully exhausted his review. And ten years later, once there was no pending petitions for review, no pending motions to reopen, no pending applications for immigration relief, the service went to execute the order. And there is no indication in this case that there was any prejudice, and therefore, unless the Court has any questions, we would submit. All right. No questions. All right. Thank you. Thank you. Your Honor, what counsel fails to note in this case is that the family petition, the Form I-130, wasn't approved until the writ of habeas corpus was filed, and it was only approved through the assistance of government counsel in this case. Now, a petitioner cannot come forward to the immigration courts and say, reopen my proceedings, until that family petition was first approved. You need an underlying basis for adjustment of status before you can proceed with their request to join in a motion to reopen. Now, with regards to the I-130 petition in this case, yes, the I-130 petition was signed by Ms. Ira, and it was signed to her address. But that doesn't eliminate the fact that we have a statement from an attorney in this case, for which there's absolutely no reason to doubt that he did, in fact, submit that request for a continuance. The fact that the service mailed the denial letter to the petitioner's wife herself doesn't mean that he wasn't represented by counsel. It simply means that perhaps that G-28 was misplaced in this file. And, yes, with regards to this conviction, if petitioner is deported, despite all the equities in this case. Do you have a copy of that G-28? Your Honor, I could have submitted a copy of the G-28, but that's a standard form which is submitted in any immigration case. What I do have is the letter from Mr. Sher that says that he filed it. Well, did he keep a copy of it? Your Honor, I don't know if he kept a copy, but he says that he submitted this conformed copy on top of his request letter, and that behind that interview letter that has the date stamp at the very bottom, he attached his Notice of Injury of Appearance, his G-28. Contact him and see if you can get a copy? Your Honor, certainly. But that document is not going to have a stamp on it showing that the notice was filed because of How do you know unless you go see him? Because Mr. Sher provided me the information that he had available, which was the date stamp on the lower right-hand corner of the interview notice in his letter, which says that I submitted my What was the reason for the continuance? Your Honor, the continuance, I don't know what the reason was. Apparently, they weren't ready to go to the interview. When you go forward with the family petition interview, you need to produce documents to show a joint domicile, to show that it is a good-faith marriage. Copies are needed for the interview. So I don't know what the basis was, but what I do know is that there's a document in the government's file that was submitted a day before the hearing. And the only way that document made it to the file is if someone filed that document at the window, at the place where the interview was going to take place. It wasn't filed at the board. It wasn't filed with the Immigration Court. It would have been rejected. That document had nothing to do with the BIA, with the board, or with the Immigration Court. The only place that could have taken that document was the Immigration Service in this case. And lastly, Your Honor, the respondent, government argues that in this case, Petitioner has exhausted all remedies. Clearly, he has not exhausted all remedies because at the time, he had a pending family petition. A petitioner was denied when he failed to appear in February. How's this fellow, Sher, doing now? Your Honor, he is gainfully employed. He is working. He is a homeowner in the City of Los Angeles. I'm sorry, Your Honor. Did you say Mr. Sher? I thought you said Petitioner. Mr. Sher, I believe, is still an attorney with the same law firm that previously represented Petitioner Mr. Mendiola. I don't know, Mr. Sher. I don't know the extent of his representation or the quality of his representation. What I do know is that he provided me with this statement. He provided me with a phone copy of the interview letter. And he asserts in this letter that he requested a continuous and that a G-28 notice of appearance was submitted on the day of the hearing. And given that in this case, at worst, Your Honor, I'd like to complete with the following statement. Petitioner was still represented by his first attorney, Mr. Bueno, Mr. Dresselhaus. There is a notice of appearance from an attorney in the record that was provided on appeal to this court. It wasn't provided to the district court on appeal to this court in the supplemental excerpts.  Now, that notice doesn't have an expiration date. What happened to Dresselhaus? Your Honor, he is still around. Mr. Dresselhaus and Mr. Bueno still practice in immigration court. And they practice daily. And so in this case, if, in fact, there was no G-28 for Mr. Sher, a notice should have been provided to the last known attorney in this record. How did they disappear from this case? Your Honor, over time, they, for some reason, didn't continue with this representation. I don't know. There could have been a change of counsel in this case at one point. I'm not aware of why they stopped representing the petitioner in this matter. But what I do know is that once you submit that notice of entry of appearance before the immigration court. Who did your client go to in the first instance? Mr. Bueno, Your Honor, yes. Where? Mr. Bueno and Dresselhaus in Los Angeles. Those were the first attorneys who represented him in the immigration court proceedings. And are they part of a group? I believe they're a two-person firm, Your Honor. And they're the ones who filed that notice. And that notice was, in fact, found in the government's file. It is there now. So even if Mr. Sher is not found to be the attorney in this case, certainly Mr. Bueno is still the attorney in the matter. Are they people who are sometimes characterized as appearance lawyers? Your Honor, I do know that that reputation has been vested upon them by some other individuals. They are individuals who are in court on a daily basis. I can't really speak to exactly what they do. I'm not affiliated. Are they tied up with any notarios? Your Honor, again, I can certainly speak to rumors regarding that representation, but I'm not aware to what extent they may be connected to notary publics. But despite that, the issue remains and the fact remains that there is a notice of appearance in the government's file. Are they members of the State Bar? I believe, yes, they are members. They're not the California State Bar or another State Bar, as they do regularly appear before the Immigration Court. As you know, a disbarred lawyer can appear before the Immigration Court. Yes, Your Honor, I understand that. But in this case, they continue to appear regularly, and therefore … Well, a disbarred lawyer can appear regularly. I understand. I have no indication that they have ever been disbarred. Just asking. Yes, Your Honor, I understand that. But the point, Your Honor, I'd like to leave the Court with is that there is a notice of appearance from an attorney in the file, and that therefore, even if Mr. Scher is found not to have … I have no evidence, you know, that there's anything negative about this case. I have nothing to show at this time, Your Honor, if there's anything negative, only that there is a notice in the file and that they should have been provided notice. If Mr. Scher was not going to be provided notice, then certainly Mr. Dresselhaus and Mr. Bruno should have been provided notice in this case prior to Mr. Mignola being taken into custody. Thank you, Your Honor. All right. Submitted.
judges: Pregerson, Wardlaw, Archer